# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

RITA KAYE TAYLOR,

    Plaintiff,

v.            CIVIL ACTION NO. 2:19-cv-00387

CLAY COUNTY SHERIFF'S DEPARTMENT, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to dismiss filed by Defendants the Clay County Sheriff's Department (the "Department"), the Clay County Commission (the "Commission"), Robert Belt, and Jonathan Holcomb (collectively, "Defendants"). (ECF No. 7.) For the reasons discussed herein, the Court **GRANTS** the motion. (ECF No. 7.)

### I.  BACKGROUND

On November 14, 2018, Plaintiff Rita Taylor ("Plaintiff") was at her home in Hartland, West Virginia, when Deputy Jonathan Holcomb knocked on her door looking for an individual named Pat Dawson. (ECF No. 1 at 2 ¶ 7, 3 ¶ 9.) Holcomb asked if he could search her residence, but Plaintiff responded that he could not enter without a warrant. (*Id.* ¶¶ 11–12.) At that point, Deputy Robert Belt came through Plaintiff's back door and entered her kitchen. (*Id.* ¶ 15.) Plaintiff insisted again that the officers obtain a warrant, but, despite her repeated request, Holcomb and Belt proceeded to search Plaintiff's residence without her consent. (*Id.* ¶¶ 18–20.)

As a result of their actions, Plaintiff alleges she suffered indignity, embarrassment, humiliation, annoyance, inconvenience, and degradation. (*Id.* ¶ 21.)

On May 15, 2019, Plaintiff filed the present action asserting claims against Defendants for violations of her Fourth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, state constitutional violations under Article III, Section 1, 5, 6, and 10 of the West Virginia Constitution, and ordinary negligence. Defendants filed the pending motion to dismiss on August 8, 2019. (ECF No. 7.) Plaintiff filed a timely response on August 22, 2019, (ECF No. 9), and Defendants timely replied on August 29, 2019, (ECF No. 10). As such, the motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639,

647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Ms. King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, the court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [the court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

### III.   DISCUSSION

Defendants advance five arguments for dismissal of Plaintiff's claims: (1) Plaintiff's claims against the Department fail because it an entity incapable of being sued; (2) Plaintiff's claims against the Commission fail because it is entitled to immunity pursuant to the West Virginia Governmental Tort Claims and Insurance Reform Act ("Tort Claims Act"), W. Va. Code § 29-12A-1, *et seq.*; (3) the individual officers are entitled to qualified immunity on Count I to the extent Plaintiff's § 1983 claim is based on violations of the Eighth and Fourteenth Amendments; (4)

Plaintiff's state constitutional claims are inapplicable and fail to state a claim; and (5) Plaintiff's negligence claim is based on intentional conduct and, otherwise, fails to state a plausible claim.

### A. Plaintiff's Concessions

As an initial matter, Plaintiff makes several concessions to specific arguments raised in Defendants' motion. First, Plaintiff agrees to dismiss her § 1983 claim asserted in Count I of the Complaint against the Department and the Commission. (ECF No. 9 at 8 n.1.) As such, Plaintiff's § 1983 claim is **DISMISSED** without prejudice as to these defendants.

Plaintiff also appears to concede to Defendants' arguments that her state constitutional claims for violations of Article III, Sections, 1, 5, 6, and 10 of the West Virginia Constitution fail as a matter of law. Specifically, Defendants argue that Article III, Section 1 of the West Virginia Constitution has no relevance because it does not independently give rise to a cause of action. Similarly, Defendants contend that Plaintiff's monetary claim for violations of her rights secured under Article III, Section 6—the State's counterpart to the Fourth Amendment—must be dismissed because the West Virginia Constitution does not create an independent cause of action for monetary damages. Defendants also assert that Plaintiff's claim for violations of Article III, Section 5 fails because the protections against cruel and unusual punishment under this provision are only triggered after a conviction, and, here, there are no allegations that Plaintiff was arrested or convicted of a crime. Finally, Defendants argue that Plaintiff's due process claim under Article III, Section 10 is inapplicable because her claim is covered by the Fourth Amendment of the United States Constitution. (ECF No. at 8 11–16.) Plaintiff failed to address any of these arguments, and, consequently, concedes to Defendants' position. *See Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (authorizing the district court, after allowing plaintiff an opportunity to

4

respond, to "rule on the [defendant's] motion and dismiss [the] suit on the uncontroverted bases asserted therein."); *Blankenship v. Necco, LLC*, No. 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion . . . can indicate that the non-moving party concedes the point or abandons the claim."); *Weller v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 3:16-cv-110, 2017 WL 3581099, at *2 (N.D. W. Va. Aug. 18, 2017) (finding the plaintiff abandoned their claims because they failed to address the defendant's arguments). Accordingly, Plaintiff's state constitutional claims against all Defendants in Count II are **DISMISSED**.

Finally, Plaintiff apparently concedes that the Department is an improper party, incapable of being sued as she also does not address this point in her response in opposition to Defendants' motion. In their motion, Defendants note that while West Virginia law authorizes a county commission to sue or be sued, *see* W. Va. Code § 7–1–1(a)[1], state law does not contain a similar provision for county sheriff's offices. The Court agrees that the Department is not a legal entity that can be liable for any injury alleged by Plaintiff. *See Webb v. Raleigh Cty. Sheriff's Dep't*, No. 5:09-cv-01253, 2010 WL 3702648, at *7 (S.D. W. Va. Sept. 16, 2010). This Court has repeatedly held that,

> [w]hile West Virginia law provides for the election of sheriffs and the appointment of sheriff's deputies, there is no organic authority in state law that creates a sheriff's department or sheriff's office. This stands in contrast to entities such as volunteer fire departments and emergency service organizations, the existence of which is provided for by state law and both of which qualify as political subdivisions under Section 29-12A-3(c) [of the West Virginia Code].

---

[1] West Virginia Code § 7–1–1(a) provides that "[t]he county commission . . . of every county within the State of West Virginia shall be a corporation by the name of 'The County Commission of .......... County' . . . by which name it may sue and be sued, plead and be impleaded and contract and be contracted with.").

*Wilkes v. Raleigh Cty.*, No. 5:17-cv-03606, 2018 WL 1513004, at *3 (S.D. W. Va. Mar. 27, 2018) (citing *Webb*, 2010 WL 3702648, at *7); *see also Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) (concluding that a "separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency."). Accordingly, the Department is not susceptible to the instant suit, and all claims asserted against it are **DISMISSED**.

### B. Qualified Immunity

The individual defendants, Holcomb and Belt, argue that they are immune from liability for Plaintiff's § 1983 claims based on violations of the Eighth and Fourteenth Amendments because Plaintiff alleges only a single constitutional violation of unlawful search. (ECF No. 8 at 7–10.) Plaintiff's only argument in response is that a determination regarding qualified immunity would be premature and should await the close of discovery.[2] (ECF No. 9 at 7.) However, the Supreme Court has made clear that qualified immunity issues are to be resolved at the earliest possible stage of the litigation. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In fact, "the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials will be resolved prior to discovery." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 625, 640 n. 2 (1987)).

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

---

[2] Plaintiff also argues at great length that her unlawful search claim based on the Fourth Amendment is sufficiently pled in the Complaint. However, as Defendants' do not challenge Plaintiff's Fourth Amendment claim, Plaintiff's argument is irrelevant.

rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects law enforcement officers from "bad guesses in gray areas" and ensures that they may be held personally liable only "for transgressing bright lines." *Maciariello v. Summer*, 973 F.2d 295, 298 (4th Cir. 1992). Whether a governmental official is entitled to qualified immunity involves two inquiries: (1) whether the facts alleged or shown demonstrate that a depravation of a constitutional right has occurred, and (2) whether that right was clearly established at the time of the alleged violation. *See Pearson*, 555 U.S. at 232; *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013). A clearly established right is one that "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known.'" *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014) (quoting *Harlow*, 457 U.S. at 818). With respect to the second prong, "[a] law is clearly established if 'the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Court may address these two prongs in either order, and the officials are entitled to qualified immunity if Plaintiff fails to establish either one. *Pearson*, 555 U.S. at 236.

In this case, the Complaint alleges a violation of the Eighth Amendment's guarantee against cruel and unusual punishment based upon the officers' entry and search of her home. The Eighth Amendment "was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) ("The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one convicted of a crime."). In the absence of any allegation that Plaintiff was a convicted inmate, there is no basis

for her claim under the Eighth Amendment. Therefore, the Complaint fails to state a claim upon which relief can be granted under the Eighth Amendment.

To the extent that the Complaint alleges a violation of the Fourteenth Amendment's due process clause related to Plaintiff's claim for unlawful search, such claim is not cognizable under these circumstances. It is well-established that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). In *Graham*, the Supreme Court held that where an explicit textual source of constitutional protection applies to physically intrusive government conduct, "that Amendment, not the more generalized notion of 'substantive due process,'" must be the guidepost for analyzing the claim. 490 U.S. at 395. Under *Graham's* guidance, the Court may not entertain a due process claim where Plaintiff alleges a Fourth Amendment claim arising from the same wrongful conduct. *See Krein v. W. Va. State Police*, No. 2:11-cv-00962, 2012 WL 2470015, at *6 (S.D. W. Va. Jun. 27, 2012) (dismissing Fourteenth Amendment claim because "the textually specific Fourth Amendment protection preempts the more generalized substantive due process protection").

The facts as set forth in the Complaint, even taken in the light most favorable to Plaintiff, are insufficient to overcome Holcomb and Belt's assertion of qualified immunity. Accordingly, as Plaintiff has not sufficiently alleged any violations of the Eighth and Fourteenth Amendments, the Court finds that the individual defendants are entitled to qualified immunity on Count I to the extent it is based on the Eighth and Fourteenth Amendments.

*C. Statutory Immunity*

The Commission raises several immunity arguments. First, the Commission contends that the Tort Claims Act renders it immune from liability for Plaintiff's state constitutional claims because they are premised solely on intentional conduct. Plaintiff's implied concessions with respect to her state constitutional claims, as noted previously, renders this issue moot. *See supra* III.A. Nevertheless, even if Plaintiff's state constitutional claims survived at this stage, the Commission could not be subject to liability under Count II.

West Virginia law provides that political subdivisions may be liable for the negligent acts of their employees, committed while said employees are acting within the scope of their employment. *See* W. Va. Code § 29-12A-4(c)(2). In contrast, "West Virginia political subdivisions are not liable for the intentional malfeasance of their employees." *Jones v. Bd. of Educ. of Putnam Cty., W. Va.*, No. 3:19-cv-0618, 2020 WL 118600, at *7 (S.D. W. Va. Jan. 9, 2020). Here, Plaintiff's state constitutional violations are not premised on negligence, but, rather, the alleged intentional acts of Holcomb and Belt. In connection with her state constitutional claims, Plaintiff expressly alleges that "[t]he defendants' actions were reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to the plaintiff . . . ." (ECF No. 1 at 7 ¶ 43.) This, of course, is not negligence. *See Stone v. Rudolph*, 32 S.E.2d 742, 748 (W. Va. 1944) ("A wilful [*sic*] act is an intentional act, and, strictly speaking, there can be no such thing as wilful [*sic*] negligence, because negligence conveys the idea of inadvertence as distinguished from premeditation or formed intention."). Therefore,

Plaintiff's state constitutional claims against the Commission must be **DISMISSED**, not due to statutory immunity but because Plaintiff's claim is only premised on intentional conduct.[3]

The Commission also argues that it is immune from liability for Plaintiff's negligence claim pursuant to West Virginia Code § 29-12A-5(a)(5), which provides that a political subdivision is immune from liability if a loss or claim results from ". . . a failure to provide, or the method of providing police, law enforcement or fire protection." Plaintiff counters, citing West Virginia Code 29-12A-4(c)(2), that the Commission is susceptible to liability for the alleged negligent acts of Holcomb and Belt carried out in the scope of their employment.

As "[t]he general rule of construction in governmental tort legislation cases favors liability, not immunity," political subdivisions are liable for losses resulting from their employees' negligence "[u]nless the legislature has clearly provided for immunity under the circumstances." Syl. pt. 2, *Marlin v. Bill Rich Const., Inc.*, 482 S.E.2d 620 (W. Va. 1996). Plaintiff correctly notes that political subdivisions can be liable for the negligent acts of their employees performed in the scope of their employment under West Virginia Code 29-12A-4(c)(2), but the liability provided for in Section 4 is conditioned upon the absence of any applicable immunity provision set forth in Section 5. *See Albert v. City of Wheeling*, 792 S.E.2d 628, 631 (2016) (noting that "subsection 4(c) begins with the disclaimer that the subsequent grants of liability are expressly made '[s]ubject to section five [§ 29-12A-5] and six [§ 29-12A-6].'"); *Hose v. Berkeley Cty. Planning Comm'n*, 460 S.E.2d 761 (W. Va. 1995) (same). As additional authority, Plaintiff cites *Smith v. Burdette*, 566 S.E.2d 614 (W. Va. 2002), which held that Section 5(a)(5) of the Torts Claim Act "does not

---

[3] Plaintiff cites West Virginia Code § 29-12A-18(e) to suggest that immunity does not apply here. (ECF No. 9 at 8–10.) However, as statutory immunity is not the basis for dismissal of Plaintiff's state constitutional claims, the Court declines to consider this argument.

provide immunity to a political subdivision for the negligent acts of the political subdivision's employee performing acts in furtherance of a method of providing police, law enforcement or fire protection." *Id.* at 618.

In *Smith*, the plaintiff alleged that a police officer negligently drove his cruiser through a red light and collided with his vehicle. 566 S.E.2d at 616. The West Virginia Supreme Court concluded the city, which employed the officer, was not entitled to immunity, reasoning that immunity under West Virginia Code § 29-12A-5(a)(5) is limited to the "decision-making or the planning process in developing a governmental policy, including how that policy is to be performed." *Id.* at syl. pt. 4. Importantly, however, the court made clear that this immunity does not relate to the negligent acts of political subdivision employees acting on those policies. *Id.* at syl. pt. 5. In reaching this conclusion, the West Virginia Supreme Court explained the following:

> This Court has discussed the meaning of the phrase "the method of providing police protection" in *Beckley v. Crabtree*, 189 W. Va. 94, 428 S.E.2d 317 (1993), *Mallamo v. Town of Rivesville*, 197 W. Va. 616, 477 S.E.2d 525 (1996), and *Westfall v. City of Dunbar*, 205 W. Va. 246, 517 S.E.2d 479 (1999) (per curiam). "The phrase 'the method of providing police, law enforcement or fire protection' contained in W. Va. Code, § 29–12A–5(a)(5) refers to the formulation and implementation of *policy* related to how police, law enforcement, or fire protection is to be provided." Syllabus Point 3, *Beckley v. Crabtree*, 189 W. Va. 94, 428 S.E.2d 317 (1993).

*Id.* at 480 (emphasis in original). Thus, under the teachings of *Smith*, a political subdivision is not entitled to immunity if an alleged negligent act results from the manner in which an employee implements a policy regarding police protection.

In *Albert v. City of Wheeling*, 792 S.E.2d 628 (W. Va. 2016), the West Virginia Supreme Court revisited the immunity provision set forth in Section 5 of the Torts Claim Act. Reiterating that Section 4(c) is expressly subject to Sections 5 and 6, the Court concluded that

11

> [s]tatutory immunity exists for a political subdivision under the provisions of West Virginia Code § 29-12A-5(a)(5) if a loss or claim results from the failure to provide fire protection or the method of providing fire protection regardless of whether such loss or claim, asserted under West Virginia Code § 29-12A-4(c)(2), is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment. To the extent that this ruling is inconsistent with syllabus point five of *Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002), the holding as it pertains to the negligent acts of a political subdivision's employee in furtherance of a method of providing fire protection is hereby overruled.

*Id.* at 632. In effect, the *Albert* court overruled the limitation of the police protection immunity announced in *Smith*. Because the specified immunity provided in subsection 5(a)(5) trumps the grant of liability seemingly extended by subsection 4(c)(2), the Commission is shielded from allegations of Holcomb and Belt's negligence. Accordingly, the Commission is **DISMISSED** from Plaintiff's negligence claim asserted in Count III.

*D. Negligence*

Defendants argue that the Complaint fails to state a plausible claim of negligence. To state a negligence claim under West Virginia law, a plaintiff must "show four basic elements: duty, breach, causation, and damages." *Hersh v. E-T Enterprises, Ltd. P'ship*, 752 S.E.2d 336, 341 (W. Va. 2013), *abrogated by statute on other grounds in Tabit v. Kroger Grp. Coop., Inc.*, No. 18-0287 (W. Va. Feb. 11, 2019). Plaintiff has failed to do so here. Plaintiff alleges that "[t]he defendants were negligent in the performance of their duties within the scope of their employment", (ECF No. 1 at 7 ¶ 44), but she fails to allege the requisite duty in the Complaint.

Even if Plaintiff had adequately pled a duty of care, the acts alleged against Defendants are only for intentional conduct. As a rule, a plaintiff "[cannot] prevail on a claim of simple negligence based on [a defendant's] intentional act." *Smith v. Lusk*, 533 F. App'x 280, 284 (4th Cir. 2013) (citing *Stone*, 32 S.E.2d at 748 (noting that "intentional acts are not encompassed by

12

general negligence principles")); *Weigle v. Pifer*, 139 F. Supp. 3d 760, 780 (S.D. W. Va. 2015) ("A mere allegation of negligence does not turn an intentional tort into negligent conduct.") (citations omitted). This Court has previously explained that "[c]onduct that supports a negligence claim can be distinguished from conduct that supports an intentional tort claim by examining the subjective intent of the alleged tortfeasor." *Id.* Specifically, "[i]ntentional torts, as distinguished from negligent or reckless torts . . . generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)); *see also Mandolidis v. Elkins Indus., Inc.*, 246 S.E.2d 907, 913–14 (W. Va. 1978) ("The law of this jurisdiction recognizes a distinction between negligence, including gross negligence, and wilful [*sic*], wanton, and reckless misconduct. The latter type of conduct requires a subjective realization of the risk of bodily injury created by the activity and as such does not constitute any form of negligence.") (superseded by statute on other grounds).

While couched in negligent terms, Plaintiff's claim relies on the very same facts that were alleged to make out a claim for unlawful search under § 1983. Again, it is fatal to Plaintiff's claim that, throughout the Complaint, she characterizes Defendants' actions as "reprehensible, willful, wanton, malicious, and/or undertaken with blatant and intentional disregard of the rights owed to the plaintiff . . . ." (*Id.* at 5 ¶ 34.) The only inference that can be drawn from these allegations is that Defendants intended the consequences of their actions. That is, their unlawful entry was undertaken for the purpose of searching Plaintiff's home. Thus, Defendants' alleged intentional or willful conduct cannot support liability predicated on negligence. *See e.g., Brown v. J.C. Penney Corp.*, 521 F. App'x 922, 924 (11th Cir. 2013) (per curiam) ("A claim for negligence cannot be premised solely on a defendant's alleged commission of an intentional tort.").

According, Plaintiff's negligence claim is **DISMISSED** for failure to state a claim upon which relief can be granted.[4]

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' partial Motion to Dismiss. (ECF No. 7.) The Court **DISMISSES** all claims asserts against the Department and the Commission. Further, the Court **DISMISSES** Counts II and III in their entirety and Count I against Defendants Holcomb and Belt insofar as it is based on violations of the Eighth and Fourteenth Amendments.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 24, 2020

THOMAS E. JOHNSTON, CHIEF JUDGE

---

[4] For these same reasons, the Commission could not be subject to liability for any alleged intentional acts of Holcomb and Belt. *See supra* III.C.